**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2495
_____

EDWARD SISTRUNK,

Appellant

v.

GERALD ROZUM;
THE DISTRICT ATTORNEY OF THE
COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE
STATE OF PENNSYLVANIA

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:06-cv-05630)
District Judge: Hon. John R. Padova

Submitted under Third Circuit LAR 34.1(a)
October 28, 2011

Before: SLOVITER, GREENAWAY, JR. and ALDISERT,
<u>Circuit Judges</u>.

(Filed: March 20, 2012)

Teri B. Himebaugh, Esq.
220 Stallion Lane
Schwenksville, PA 19473

*Attorney for Appellant*

Molly Selzer Lorber, Assistant District Attorney
Thomas W. Dolgenos, Chief, Federal Litigation
Ronald Eisenberg, Deputy District Attorney, Law Division
Joseph E. McGettigan, III, First Assistant District Attorney
R. Seth Williams, District Attorney
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107-3499

*Attorneys for Appellees*

_____

OPINION OF THE COURT
_____

ALDISERT, <u>Circuit Judge</u>.

This appeal seeks review of a denial of a petition for habeas corpus by Edward Sistrunk, an inmate in Respondents' custody. After pursuing and exhausting his state court avenues for appeal, Sistrunk sought habeas relief from the United States District Court for the Eastern District of Pennsylvania on the basis of newly discovered evidence of his "actual innocence." The District Court concluded that the Pennsylvania state courts' disposition of Sistrunk's appeal

was not contrary to, nor an unreasonable application of, clearly established federal law, and denied his petition. We will affirm.

The certificate of appealability ("COA") limits our review to a single issue: whether Sistrunk's habeas petition was timely filed according to 28 U.S.C. § 2244(d)(1)(D). By sheer counting of calendar days, it is undisputed that Sistrunk's petition was filed long after his one-year timeliness period expired. But because the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") provides several avenues for petitioners to satisfy timeliness, Sistrunk's argument requires us to determine whether he is entitled to statutory tolling or different types of equitable tolling that might save his claim. Specifically, Sistrunk contends that he is entitled to: (1) statutory tolling on the basis of uncovering new, exculpatory evidence; (2) equitable tolling due to government witness tampering; or (3) equitable tolling because he is actually innocent.

We conclude that Sistrunk does not qualify for these tolling exceptions. Sistrunk's delays are inexcusable, his evidence is not "new," and even if we permitted equitable tolling for actual innocence, Sistrunk's proofs of "actual innocence" fall short. We will, therefore, affirm the District Court's judgment.

I.
A.
In the early morning hours of July 23, 1993, Edward Sistrunk used his automobile horn and headlamps to harass a car driven by Julmaine Moody on a residential road in

3

Philadelphia, Pennsylvania.[1] Both cars pulled over. An altercation between the cars' occupants broke out, but ceased abruptly when a passenger in Moody's car recognized a passenger in Sistrunk's car as an acquaintance. All reentered their respective vehicles, and the cars returned to the roadway. Sistrunk then positioned his moving car alongside Moody's, drew a revolver, aimed at a passenger in Moody's car with whom he had had a heated exchange, and fired. Missing its intended mark, the bullet struck the unarmed and pregnant Moody in the head, killing her.

Sistrunk evaded capture for three months until his arrest in North Carolina. Multiple witnesses identified Sistrunk as the shooter, including Sistrunk's intended victim, David Snyder. Out of the many people who implicated Sistrunk in the murder, one witness of particular significance here, Gregory Anderson, gave a statement to police and testified at a preliminary hearing on January 6, 1994, that he was in Sistrunk's car at the time of the murder and that Sistrunk was the murderer. Anderson disappeared before trial and therefore did not testify, but Sistrunk's defense counsel successfully argued to admit Anderson's hearing testimony at trial. The trial court found as a fact that all witnesses agreed Sistrunk was the shooter.

On May 18, 1995, the court sentenced Sistrunk to life imprisonment for murdering Moody. In addition, the court

---

[1] AEDPA requires us to presume that the state courts' factual findings are valid and binding, absent clear and convincing evidence to the contrary. See 28 U.S.C. § 2254(e)(1). We thus relate the relevant facts as found by the Pennsylvania state courts.

sentenced Sistrunk to concurrent imprisonment terms for possession of an instrument of crime, reckless endangerment, and simple assault. The Pennsylvania Superior Court affirmed Sistrunk's sentence on July 19, 1996. The Pennsylvania Supreme Court then denied Sistrunk's petition for allowance of appeal on December 11, 1996. His conviction became final on March 11, 1997, when Sistrunk's deadline for filing a petition for certiorari in the United States Supreme Court passed. See 28 U.S.C. § 2101(c); Kapral v. United States, 166 F.3d 565, 575 (3d Cir. 1999).

## B.

Sistrunk filed a petition for relief under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541-9546, on December 11, 1997, contending that his appellate counsel was ineffective for failing to challenge the effectiveness of his trial counsel. The PCRA court dismissed Sistrunk's petition because Sistrunk had already litigated the issues on direct appeal. The Pennsylvania Superior Court then affirmed this dismissal on June 19, 2000.

Sistrunk filed a second PCRA petition on June 26, 2002, contending that newly discovered evidence entitled him to a new trial or evidentiary hearing. Sistrunk alleged that he had uncovered evidence proving that another person had confessed to shooting Moody. Sistrunk claimed to have first heard on April 29, 2002, that Damon Rodriguez—now deceased—had told Manuel Rodriguez in 1993 that Damon had driven the car on the night of the murder and had shot Moody. The PCRA court dismissed this petition as untimely on July 9, 2003. The Superior Court affirmed this dismissal on January 26, 2005. The Pennsylvania Supreme Court then

denied Sistrunk's petition for allowance of appeal on October 4, 2005.

On August 18, 2006, Sistrunk filed a third PCRA petition, asking the PCRA court to vacate his conviction based on more newly discovered evidence of his actual innocence. In this petition, Sistrunk alleged that his attorney received a letter from Gregory Anderson—Sistrunk's cousin—on June 22, 2006, admitting to perjuring himself at Sistrunk's preliminary hearing by testifying that Sistrunk was the shooter. Anderson further claimed that police investigators coerced him into giving false testimony, specifically against Sistrunk, by threatening to charge Anderson with conspiracy. After testifying to Sistrunk's detriment at the preliminary hearing and then failing to appear at trial, Sistrunk claimed that Anderson felt the need to finally clear his conscience.

## C.

This third PCRA petition pended in Pennsylvania state court when Sistrunk filed his federal petition, on December 22, 2006. In it, Sistrunk raised two claims for relief based on newly discovered evidence of innocence: (1) the Damon Rodriguez confession, which Sistrunk learned about on April 29, 2002; and (2) the Gregory Anderson letter, which Sistrunk received on June 22, 2006. On July 5, 2007, Magistrate Judge Hey issued a Report and Recommendation, advising dismissal of both claims. In an Order-Memorandum filed on October 31, 2007, the District Court for the Eastern District of Pennsylvania adopted the Recommendation to dismiss Sistrunk's Rodriguez claim, but, because Sistrunk's third PCRA petition still pended, the District Court stayed the Anderson claim. On October 30, 2008, the District Court

6

recommitted the claim to Magistrate Judge Hey for a Supplemental Report and Recommendation.

On February 24, 2009, Magistrate Judge Hey recommended that Sistrunk's Anderson claim be dismissed as time-barred. The magistrate judge concluded that: Sistrunk's conviction became final on March 11, 1997; Sistrunk's federal petition was filed on December 22, 2006, seven years past AEDPA's time limit, see 28 U.S.C. § 2244(d)(1); the Anderson letter was not "newly discovered evidence" under § 2244(d)(1)(D), and thus did not create a new one-year limitations period; Sistrunk's third PCRA petition did not toll the AEDPA limitations period; Sistrunk was not entitled to equitable tolling; and no COA should issue.

Sistrunk filed his objections with the District Court on March 5, 2009. The District Court concluded that none of Sistrunk's objections had merit, affirmed the magistrate judge's denial of a COA, and dismissed Sistrunk's habeas petition with prejudice on April 21, 2009. Sistrunk then filed an application for a COA with this Court under 28 U.S.C. § 2253(c)(1), which we granted on March 7, 2011.

II.

The District Court had jurisdiction under 28 U.S.C. § 2254(a). As discussed below in Part III, we have jurisdiction under 28 U.S.C. §§ 1291 and 2253(c).

We apply a mixed standard of review. We scrutinize jurisdictional questions and legal conclusions under a plenary standard of review. See Lambert v. Blackwell, 387 F.3d 210, 231 (3d Cir. 2004). On the merits, however, "a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States." Estelle v.

7

McGuire, 502 U.S. 62, 67-68 (1991). "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005). Under AEDPA, moreover, we must deny the writ unless the petitioner shows that the state court conviction unreasonably applied clearly established federal law, was contrary to clearly established federal law, or was based on an "objectively unreasonable" determination of the facts in light of the evidence. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 409-410 (2000).

## III.

Before turning to Sistrunk's substantive arguments, we address briefly—and ultimately dismiss—the government's contention that we lack jurisdiction because Sistrunk's habeas petition does not state a constitutional claim. This argument attacks our jurisdiction on two levels. First, the government contends that the absence of a constitutional claim renders the COA defective, barring us from considering Sistrunk's claims. Second, the government argues that Sistrunk's petition points only to his imprisonment-while-actually-innocent as a constitutional harm. Because, in the government's view, a freestanding claim of innocence is not a proper "basis for federal habeas relief absent an independent constitutional violation occurring in the state trial," Albrecht v. Horn, 485 F.3d 103, 121 (3d Cir. 2007) (citing Herrera v. Collins, 506 U.S. 390, 400 (1993)), Sistrunk's petition—even if it were timely—would lack the requisite underlying "independent constitutional violation" needed for our jurisdiction.

We conclude that our exercise of jurisdiction is proper. First, the United States Supreme Court's opinion in Gonzalez

8

v. Thaler, 132 S. Ct. 641 (2012), destroys the government's attack on the COA. Even a defective COA does not thwart our jurisdiction. Rather, "[o]nce a judge has made the determination that a COA is warranted"—which has happened here—"the COA has fulfilled [its] gatekeeping function." Id. at 650. No further scrutiny of the COA is necessary. See id. at 652 ("[Section] 2253(c)(3) is a nonjurisdictional rule . . . .").

Second, we need not address whether a freestanding claim of actual innocence would be cognizable on federal habeas review because that is not all that Sistrunk's petition offers.[2] Sistrunk's claims of innocence, rather, expressly

---

[2] Neither this Court nor the Supreme Court has ever held that a freestanding claim of innocence merits habeas relief. See, e.g., Han Tak Lee v. Glunt, 667 F.3d 397, 403 n.5 (3d Cir. 2012) (reserving the issue expressly while permitting the petitioner's claim to proceed on due process grounds); United States v. Davies, 394 F.3d 182, 191 n.8 (3d Cir. 2005) (highlighting without ruling on the petitioner's actual innocence claim). Other courts have discussed the issue and reached divergent conclusions. See, e.g., Souter v. Jones, 395 F.3d 577, 599 (6th Cir. 2005) (permitting equitable tolling for a "credible showing of actual innocence"); Cousin v. Lensing, 310 F.3d 843, 849 (5th Cir. 2002) (rejecting an actual innocence equitable tolling claim). Indeed, the Supreme Court noted in discussing whether actual innocence implicates the Constitution that "[w]hether such a federal right exists is an open question. [Courts] have struggled with it over the years, in some cases assuming, *arguendo*, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet." Dist. Att'ys

incorporate separate constitutional violations. Sistrunk states in his petition that he "was denied his Fourteenth and Sixth Amendment rights," not only because he is allegedly innocent, but also because newly discovered evidence shows that witnesses colluded to keep the identity of the real murderer a secret and one witness—Gregory Anderson—perjured himself due to government coercion. These claims are probative of innocence, to be sure, but they also implicate sufficiently Sistrunk's right to due process. Indeed, "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." Napue v. Illinois, 360 U.S. 264, 269 (1959); see Lambert v. Blackwell, 387 F.3d 210, 242 (3d Cir. 2004) (stating that the government may not knowingly use perjured testimony at trial). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Napue, 360 U.S. at 269; see United States v. Agurs, 427 U.S. 97, 103 (1976) ("[T]he Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair."); Maxwell v. Roe, 628 F.3d 486, 506 (9th Cir. 2010) (granting habeas relief based on an actual innocence claim for a conviction stemming in part from perjured testimony). Moreover, the teachings of Brady v. Maryland, 373 U.S. 83, 87 (1963), require prosecutors to disclose any benefits that are given to a witness, including any possible lenient treatment in a given case. Although the veracity of Sistrunk's allegations may be in question, the constitutional violations they encompass comprise an integral and unavoidable part of Sistrunk's new-evidence-of-innocence claims: on the way to

---

Office for the Third Judicial Dist. v. Osborne, 129 S. Ct. 2308, 2321 (2009) (citations omitted).

demonstrating his innocence, Sistrunk's new evidence would show also that the government violated Sistrunk's due process rights. Such a showing would unquestionably establish one or more "independent constitutional violations" and therefore would grant us jurisdiction to review the merits of Sistrunk's petition *if*—and only if—it is timely.[3] We turn now to address that question.

## IV.

There can be no dispute that Sistrunk's petition would be time-barred without AEDPA's tolling exceptions. Sistrunk's conviction became final on March 11, 1997. See 28 U.S.C. § 2244(d)(1). He had until one year from that date to file a habeas petition. Id. § 2244(d)(1)(A). Sistrunk did not file his federal petition, however, until December 22, 2006, many years too tardy. Sistrunk then rushed to raise three tolling arguments, any one of which would salvage his otherwise-barred petition. He contends that he is entitled to: (1) statutory tolling of his entire petition under § 2244(d)(2) for the time during which his state postconviction review pended; (2) equitable tolling because of the discovery of new evidence; or (3) equitable tolling because he is actually innocent. We ultimately reject each, and will affirm the District Court's judgment.

## A.

Sistrunk contends first that his petition is subject to AEDPA's express statutory tolling provision, which permits tolling for the time during which a properly filed application

---

[3] As discussed *infra*, because we conclude that Sistrunk's petition is not timely, we do not reach the merits of his claims to determine whether such a violation actually occurred.

11

for state postconviction review is pending in state courts. See 28 U.S.C. § 2244(d)(2); Swartz v. Meyers, 204 F.3d 417, 420 (3d Cir. 2000). Sistrunk's application was indeed "pending"—he filed a new petition for review in the state PCRA court within 60 days of receiving the letter. The issue here is whether the application was "properly filed." Although AEDPA permits a tardy state court filing upon the discovery of new evidence, see 28 U.S.C. § 2244(d)(1)(D), Sistrunk's contention depends on whether the Anderson letter fits within AEDPA's definition of "new" evidence: the date on which the "factual predicate" of the evidence was known. We hold that it does not.

The District Court concluded that Sistrunk's petition for state review was not properly filed because the Anderson letter did not constitute newly discovered evidence under § 2244(d)(1)(D). Rather, the District Court held, Sistrunk knew of Anderson's perjury no later than January 1994, over a decade before he supposedly uncovered this evidence.

Sistrunk contends that this holding was in error, because he did not learn of the factual predicate underlying Anderson's letter until June 22, 2006, when his attorney received it. His knowledge of his own innocence notwithstanding, Sistrunk insists that he could not have introduced evidence about Anderson's initial reticence to come forward, the perjury of a key witness, police misconduct, or witness tampering until his receipt of Anderson's revelations.[4] The government responds that the

---

[4] Assuming Anderson's letter succeeds in tolling Sistrunk's time to file, Sistrunk also contends that this letter permits him to bootstrap the Rodriguez claim into his petition. See Sweger

12

"facts" of Sistrunk's innocence and Anderson's perjury were long ago determined, and the appearance of a new witness to testify to that fact does not restart the limitations period.

Because the Anderson letter does not fit within AEDPA's definition of "new" evidence, we agree with the District Court that Sistrunk's petition was improperly filed, and thus, cannot toll AEDPA's limitations period. Evidence becomes "known" on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of reasonable diligence." 28 U.S.C. § 2244(d)(1)(D). Here, the PCRA court found that Sistrunk not only could have known, but actually <u>did</u> know of the vital facts underlying both the Anderson letter and Rodriguez affidavit—i.e., Damon Rodriguez was the real shooter and Gregory Anderson perjured himself—long before the filing of his habeas petition. <u>See</u> App. 00092. This finding by the state court binds us. <u>See</u> <u>Warren v. Kyler</u>, 422 F.3d 132, 136 (3d Cir. 2005) ("'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" (quoting <u>Estelle</u>, 502 U.S. at 67-68)). Because evidence that is "previously known, but only newly available" does not constitute "newly discovered evidence," <u>United States v. Jasin</u>, 280 F.3d 355, 362 (3d Cir. 2002), we will not construe the evidence of innocence Sistrunk offers as "new." Similarly, to the extent that the Anderson letter introduced

---

v. Chesney, 294 F.3d 506, 520 (3d Cir. 2002) (holding that tolling applies to the entire petition so long as the state proceeding attacks the same judgment as the habeas petition does). Because we deny Sistrunk's tolling claim related to the Anderson letter, his attempt to revive his barred contentions concerning the Rodriguez affidavit also fails.

13

new evidence of the reasons behind Anderson's perjury, "evidence known but unavailable at trial does not constitute 'newly discovered evidence' within the meaning of Rule 33." Id.

B.

Sistrunk next contends that the government's attempt to actively mislead him with respect to his Rodriguez affidavit claim entitles him to equitable tolling. Because Sistrunk cannot show *both* (1) extraordinarily burdensome circumstances as well as (2) reasonable diligence in investigating the claim, see Schlueter v. Varner, 384 F.3d 69, 78 (3d Cir. 2004), we hold that he cannot avail himself of equitable tolling.

The District Court rejected this contention because Sistrunk knew of Rodriguez's guilt and Anderson's perjury and yet did nothing about these facts for twelve years, placing his case far outside the bounds of "reasonable diligence."

Sistrunk, seeking to construct an unstated declaration of what the court meant but did not say, contends that he was "actively misled" by the PCRA court. According to Sistrunk, although the PCRA court dismissed his entire petition as untimely, it did not *mean* to affix the label "untimely" to *all* of the claims within the petition, but meant instead to dismiss his affidavit claim on the merits. Because the court's alleged misstating led Sistrunk to believe his claim was dismissed as untimely, he had thought that a federal habeas petition would be futile. See Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005). After discovering the "error" in 2006, Sistrunk then "diligently" filed his federal petition.

14

The government responds that reinventing language in a judicial opinion—assuming arguendo that the opinion was mistaken—provides no grounds for equitable tolling.[5] The government contends, moreover, that reasonable diligence cannot mean that a habeas petitioner may "sit quietly by, knowing there are multiple witnesses to his version of events, and do nothing to present this evidence to any court for years on end." Gov't Br. at 39; cf. Schlup v. Delo, 513 U.S. 298, 332 (1995) (holding that courts "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence" when considering claims of innocence).

Both the Supreme Court and this Court agree with the District Court that Sistrunk's claims do not qualify for equitable tolling. AEDPA does not provide additional justifications for tolling its one-year time limit beyond the specific instances listed in § 2244(d). Although we have recognized rare situations in which equity permits tolling, see Holland v. Florida, 130 S. Ct. 2549, 2560 (2010) (holding that AEDPA's time limitations are "subject to equitable tolling in appropriate cases"); Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 617 (3d Cir. 1998) (holding that equitable tolling may only occur when a petitioner has been extraordinarily prevented from asserting his rights), this is not one of those situations.

As we have explained, "[t]here are no bright lines in determining whether equitable tolling is warranted in a given

---

[5] The government is correct that the PCRA court indeed rejected Sistrunk's Rodriguez claim as untimely. See App. 00026.

case." Pabon v. Mahanoy, 654 F.3d 385, 399 (3d Cir. 2011). Nevertheless, "courts must be sparing in their use of equitable tolling," Seitzinger v. Reading Hosp. & Medical Ctr., 165 F.3d 236, 239 (3d Cir. 1999), and should do so "only when the principles of equity would make the rigid application of a limitation period unfair." Miller, 145 F.3d at 618 (internal quotation marks and citation omitted). The Supreme Court has provided guidance as to when the "principles of equity" permit equitable tolling: "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 130 S. Ct. at 2562-2563 (internal quotation marks and citation omitted). This conjunctive standard requires showing *both* elements before we will permit tolling. See Schlueter, 384 F.3d at 78.

Here, it is readily apparent that Sistrunk cannot meet the Holland standard, as he has shown neither diligence nor extraordinarily burdensome circumstances. As for diligence, Sistrunk was in the car on the night of the shooting with three other people, one of whom—Damon Rodriguez—was the supposed killer. One passenger, Gregory Anderson, testified against Sistrunk. In the intervening years, Sistrunk made no effort to get Anderson to recant his testimony or to get the other passengers to testify. As the PCRA court concluded, Sistrunk (a) knew of both Rodriguez's guilt and Anderson's perjury and (b) did nothing about either for 12 years. When a petitioner has knowledge of his innocence and of witnesses who might testify to it, "[m]ere excusable neglect is not sufficient" to show diligence. Miller, 145 F.3d at 619. Sistrunk waited far too long to possibly claim that he has diligently pursued this claim. See Pace, 544 U.S. at 418-419

16

(holding that a five-month delay demonstrated a lack of diligence).

Moreover, even if we held that Sistrunk were diligent, he has not been extraordinarily burdened or prevented from pressing his claim. We have a high standard for "extraordinary circumstances." See, e.g., Pabon, 654 F.3d at 400 (holding that a defendant's inability to speak English and the lack of Spanish language legal materials or interpreters constituted extraordinary circumstances). Even assuming that the PCRA court dismissed Sistrunk's claim on the merits, and not for timeliness reasons, misreading a court opinion is not an "extraordinary circumstance [that] stood in his way and prevented timely filing." Holland, 130 S. Ct. at 2562-2563 (citations omitted).

Sistrunk needed to show *both* diligence and extraordinary circumstances to succeed on his equitable tolling argument. He can show neither. As a result, we conclude that the District Court correctly dismissed Sistrunk's first equitable tolling claim.

III.

Finally, Sistrunk contends that he is entitled to equitable tolling on the separate ground that he is introducing evidence of "actual innocence," a claim that should permit him to clear any procedural hurdles to obtaining a new evidentiary hearing on his innocence. We disagree. Regardless of whether we adopt the contention that Sistrunk's actual innocence might permit equitable tolling, we hold that Sistrunk has not shown that the evidence he seeks to submit

demonstrates that he *is* actually innocent. We therefore will affirm the District Court's dismissal of Sistrunk's petition.[6]

Sistrunk contends that the evidence he now offers—the Anderson letter and the Rodriguez affidavit—satisfies the Supreme Court's standard for actual innocence: that no reasonable juror would have voted to find Sistrunk guilty had these pieces of evidence been available at trial. See Bousley v. United States, 523 U.S. 614, 623 (1998) ("'Actual innocence' means factual innocence, not mere legal insufficiency." (citation omitted)). Sistrunk then argues that this evidence of innocence entitles him to equitable tolling. The government responds that, even if we were to hold that a legitimate actual innocence claim could permit equitable tolling, Sistrunk's case falls far short of "actual innocence."

We conclude that Sistrunk is not entitled to equitable tolling for actual innocence because he cannot show that he is, in fact, innocent.[7] Proving actual innocence based on new evidence requires the petitioner to demonstrate (1) new evidence (2) that is reliable and (3) so probative of innocence that no reasonable juror would have convicted the petitioner. Schlup, 513 U.S. at 324, 327; see also House v. Bell, 547 U.S. 518, 536-537 (2006). All three Schlup factors are

---

[6] The District Court dismissed this claim entirely on the ground that Sistrunk has not been diligent. Because Sistrunk's claim, as he crafts it, would trump the diligence requirement from above, we proceed to discuss it in greater detail.

[7] We do not decide whether a petitioner's actual innocence might permit equitable tolling because, even if it could, Sistrunk does not meet the preliminary requirement of demonstrating his innocence.

18

necessary for Sistrunk to prevail. See House, 547 U.S. at 536-537. He fails each.

First, as discussed, Sistrunk's evidence is not "new." Second, even if it were, it is not reliable. The Pennsylvania PCRA court's factual finding that Rodriguez's affidavit is unreliable binds us, and Sistrunk has not shown clear and convincing evidence to the contrary. See Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000). The Anderson letter, too, is not reliable—it comes nearly a decade too tardy from another prisoner, who is related to Sistrunk and admits to having lied once before. Cf. Taylor v. Illinois, 484 U.S. 400, 414 (1988) ("It is . . . reasonable to presume that there is something suspect about a defense witness who is not identified until after the 11th hour has passed."); Dobbert v. Wainwright, 468 U.S. 1231, 1233-1234 (1984) ("Recantation testimony is properly viewed with great suspicion. It . . . is very often unreliable . . . , and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction."); Landano v. Rafferty, 856 F.2d 569, 572 (3d Cir. 1988) ("Courts have historically viewed recantation testimony with great suspicion."). Third, Sistrunk's new evidence simply cannot be evaluated as so probative of his innocence that no reasonable juror could have convicted him. Schlup sets a supremely high bar. Neither the recantation of a witness who did not even testify at trial nor the second-hand retelling of a jailhouse confession can clear it. There were several eyewitnesses to the crime, all of whom implicated Sistrunk at trial. Adding Sistrunk's offered evidence into the mix would still permit a reasonable juror to vote to convict. Sistrunk thus cannot meet Schlup's standard for actual innocence and cannot avail himself of equitable tolling on that basis.

V.

We hold that Sistrunk's petition is time-barred, and is subject to neither statutory nor equitable tolling. We will therefore AFFIRM the District Court's judgment.